IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Elizabeth H. Rambo, | ) | |
| | ) | |
| Plaintiff, | ) | C/A No. 8:04-1531-HMH-BHH |
| | ) | |
| vs. | ) | **OPINION & ORDER** |
| | ) | |
| Jo Anne B. Barnhart, Commissioner of Social Security, | ) ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court with the Report of United States Magistrate Judge Bruce H. Hendricks, made in accordance with 28 U.S.C. § 636(b) and Local Rule 73.02 DSC.[1]  Elizabeth H. Rambo ("Rambo") seeks judicial review of the Commissioner of Social Security's ("Commissioner") denial of her application for disability insurance benefits ("DIB") under Title II of the Social Security Act.  In her Report, Magistrate Judge Hendricks recommends reversing the Commissioner's decision and remanding the case under sentence four of 42 U.S.C. § 405(g) to the Commissioner to take appropriate action in awarding Rambo benefits.  For the reasons stated below, the court adopts the Magistrate Judge's Report, reverses the Commissioner's decision, and remands the case to the Commissioner to award Rambo benefits.

---

[1] The recommendation has no presumptive weight, and the responsibility for making a final determination remains with the United States District Court.  See Mathews v. Weber, 423 U.S. 261, 270-71 (1976).  The court is charged with making a de novo determination of those portions of the Report and Recommendation to which specific objection is made.  The court may accept, reject, or modify, in whole or in part, the recommendation made by the Magistrate Judge or recommit the matter with instructions.  See 28 U.S.C. § 636(b)(1).

# I. FACTUAL AND PROCEDURAL BACKGROUND

The facts are fully set forth in the decision of the administrative law judge ("ALJ"), (R. 20-29), and summarized as follows. At the time of the hearing before the ALJ, Rambo was a forty-six-year-old woman with a college education. (Id. 19-20.) Her past employment includes positions as an adoption specialist, service coordinator, eligibility worker, and fraud investigator. (Id. 20.) She alleges disability due to nerve damage in her left leg resulting from her hysterectomy on August 9, 1999.[2] (Id.)

On June 19, 2000, Rambo filed an application for DIB. (Id. 19, 136-38.) After a hearing, the ALJ denied Rambo's application on January 22, 2003. Rambo appealed and the Appeals Council remanded the case to the ALJ on April 22, 2003. (Id. 129-32.) On remand, after a supplemental hearing on August 4, 2003, the ALJ found that Rambo has the residual functional capacity to perform a significant range of sedentary work and is not entitled to DIB. (R. 29-30.) On April 28, 2004, the Appeals Council denied Rambo's request for review, rendering the ALJ's decision the final decision of the Commissioner. (Id. 7.) Rambo filed the instant action on May 14, 2004. The Magistrate Judge recommends reversing the Commissioner's decision and awarding disability benefits to Rambo. The Commissioner filed objections to the Magistrate Judge's Report on August 4, 2005.

## II. THE REPORT AND RECOMMENDATION

The Magistrate Judge recommends reversing the Commissioner's decision and awarding disability benefits to Rambo. In doing so, the Magistrate Judge states that the ALJ

---

[2] Beyond her nerve damage, Rambo also suffers from "a mild respiratory condition[] and mental disorders," which the ALJ considered to be severe impairments. (R. 28.)

2

erred by (1) not giving proper weight to the opinion of Dr. Walter Evans ("Dr. Evans"), Rambo's primary care physician, (2) improperly discounting Rambo's credibility, (3) failing to conduct a proper residual functional capacity analysis, and (4) relying on a defective hypothetical question to the vocational expert. The Magistrate Judge concluded that the ALJ's decision to deny coverage was not supported by substantial evidence, and reopening the record on remand would serve no purpose. Hence, the Magistrate Judge recommends that the court reverse the ALJ's decision and award Rambo disability benefits.

### III. Discussion of the Law

#### A. Standard of Review

Under 42 U.S.C. § 405(g), the court may only review whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied. See Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980). In other words, the court "must uphold the factual findings of the [Commissioner only] if they are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (emphasis added).

"A factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). "Substantial evidence" is defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990) (internal quotation marks omitted). If the Commissioner's finding is supported by substantial evidence, the court should uphold the Commissioner's finding even if the court disagrees with it. See id.

## B. Objections

The Commissioner filed five objections to the Magistrate Judge's Report, objecting to each of the Magistrate Judge's conclusions that the ALJ was in error. The Commissioner also objected to the Magistrate Judge's assertion that, if the ALJ had erred, remanding the case to the Commissioner would serve no purpose. Each objection will be addressed in turn.

### 1. The ALJ's Decision to Give Dr. Evans' Opinion Less Than Controlling Weight

The Magistrate Judge concluded that the ALJ's decision to give Dr. Evans' opinion less than "controlling weight" was not supported by substantial evidence. The Magistrate Judge found that "not only was there no persuasive contradictory evidence, there is substantial supportive evidence of Dr. Evans' opinion," noting that, despite numerous treatments, Rambo was diagnosed with nerve damage resulting from her hysterectomy and that "the ALJ ignores the fact that this plaintiff has suffered with chronic pain on a daily basis since August 1999." (Report 4, 8, 13-14.) The Commissioner objects to the Magistrate Judge's conclusion, arguing that the ALJ's determination with regard to Dr. Evans' opinion was proper.

"[A] treating physician's opinion on the nature and severity of the claimed impairment is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record." Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). However, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Id. (internal quotation marks omitted). In addition, opinions regarding disability are reserved for the Commissioner and are not medical opinions. See Determining Disability and Blindness Medical

4

Considerations–Evaluating Opinion Evidence, 20 C.F.R. § 404.1527(e) (2005). However, in making such a determination, the Commissioner will "review all of the medical findings and other evidence that support a medical source's statement that [a claimant is] disabled." Id.

The Commissioner claims the ALJ was justified in giving Dr. Evans' opinion less than controlling weight for two reasons: (1) Dr. Evans' opinion was unsupported for the relevant time period, prior to December 31, 2001, as the evidence during that period "showed that Rambo essentially had no neurological or motor deficits" supporting a finding of disability; and (2) Dr. Evans' December 2002 and December 2003 opinions were inconsistent with other substantial reports of record and Rambo's own reports of her normal daily activities. (Objections 2.)

### a. Relevant Time Period

The Commissioner's argument that Dr.Evans' opinion should be discredited due to a lack of evidence supporting a conclusion of disability during the relevant time period fails because substantial evidence supports a finding of disability before December 31, 2001, and evidence after December 31, 2001, may be used to determine whether Rambo is entitled to benefits.

Contrary to the Commissioner's suggestion, Rambo need not demonstrate "a neurological or motor deficit" to prove that she is disabled. "[P]ain itself can be disabling." Walker v. Bowen, 889 F.2d 47, 49 (4th Cir. 1989). "[W]hile there must be objective medical evidence of some condition that could reasonably produce the pain, there need not be objective evidence of the pain itself or its intensity." Id. There is no question that Rambo had a hysterectomy on August 9, 1999, and that Rambo was subsequently re-admitted to the

5

hospital for "severe left lower quadrant and left groin pain" two and a half weeks later. (Report 4.) Further, there is no dispute that a hysterectomy can cause nerve damage and disabling pain, and that numerous doctors, including Drs. Dale Lusk ("Dr. Lusk") and John Docherty, attempted to treat Rambo for pain from nerve damage following her surgery. Finally, the evidence demonstrates that Rambo suffered from such pain before December 2001, and the ALJ likewise concluded that the "evidence establishes that [Rambo] has left genitofemoral nerve damage with chronic pain" as well as "a respiratory condition, and depression, impairments that are severe as defined by the regulations." (R. 21 (internal quotation marks omitted).) The ALJ further acknowledged that objective medical evidence supported Rambo's pain, stating that the "[n]erve conduction study in February 2000 was consistent with a sciatic neuropathy." (Id.)

Rambo's date last insured for disability benefits is December 31, 2001. As such, for Rambo to recover benefits, she must prove that her disability began on or before December 31, 2001. (R. 130.) Beyond the evidence supporting Rambo's disability before December 31, 2001, there is also substantial evidence in support of Rambo's disability recorded after 2001. The Commissioner, furthermore, has cited no authority, and the court is aware of none, which prohibits the court from relying on evidence produced after the onset of a disability to support a finding of disability during the relevant time.

### b. Dr. Evans' Opinions Are Supported by the Record and Rambo's Activities Do Not Undermine Dr. Evans' Findings

In February 2000, Dr. Evans conducted a nerve conduction study, which indicated that Rambo has sciatic neuropathy. (Id. 21.) Dr. Lusk's examination in 1999 indicated that

6

Rambo had nerve compression, and Dr. Anne Marie Fras's ("Dr. Fras") progress notes in January 2001 were also consistent with a finding of left femoral nerve damage. However, the Commissioner argues that, from February through September 2001, "Dr. Evans described no clinical findings substantiating the specific limitations resulting in an inability to perform at least sedentary work," which supports the ALJ's conclusion that Rambo was not disabled as of December 31, 2001. (Objections 2-3.) However, Dr. Evans did not have to make objective medical findings between February and September of 2001; there was already substantial objective medical evidence of record documenting the surgery and nerve damage causing Rambo's pain. Nonetheless, the Commissioner asserts that the lack of medical findings during that period, in combination with Rambo's decrease in pain medication and increase in physical activities, supports the determination that she was not disabled. The court disagrees.

Dr. Evans' notes between February and September 2001 support his conclusion that Rambo is not able to complete sedentary work. In February 2001, Dr. Evans acknowledged that Rambo was off narcotics (but not all pain medication), and Dr. Evans thought "maybe we are seeing the final resolution of [Rambo's] pain syndrome." (R. 280.) However, Rambo still could not lift due to pain in her groin, and on April 2, 2001, Dr. Evans noted that Rambo was unable to sit in some positions or sit on the floor without pain. (R. 279-80.) Dr. Evans' notes on May 3, 2001, indicate again that Rambo was in chronic pain, that Dr. Evans was experimenting with different drug combinations in an attempt to manage her pain, and that "any physical activity will trigger pain in her groin." (R. 278). Similarly, Dr. Evans' notes on August 15, 2001, indicate that Rambo had "sharp shooting pains along the lateral aspect of

the thigh," was unable to sleep on her left side, and was suffering more severe pain. (R. 400.) This record, when considered with the objective medical findings of record documenting Rambo's surgery and subsequent nerve damage, supports–not undermines–a conclusion that Rambo was unfit for sedentary work.

The Commissioner further claims that Dr. Evans' December 2002 and December 2003 opinions were inconsistent with other substantial evidence in the record and with Rambo's reports of daily living, citing to Dr. Evans' notes from March, April, and June 2002. (Objections 3.) These notes do not undermine Dr. Evans' conclusion that Rambo was unfit for sedentary work, but merely explain that Rambo initially responded well to a particular drug after experiencing substantial nausea. Furthermore, both the June and March notes explain that Rambo's condition had not changed, namely, that she was suffering chronic pain, albeit with some relief from the medication. (R. 391, 394.)

"If a symptom can be reasonably controlled by medication or treatment, it is not disabling." Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986). Although it is undisputed that Rambo has had limited relief from various pain medications and treatments, the record shows that Rambo's current medication causes nausea when she walks or moves in a car, sleepiness, and difficulty with concentration. (R. 40-41, 390, 432.) Dr. Evans, who prescribed these pain medications in an effort to manage Rambo's pain, concluded that Rambo's symptoms could not be reasonably controlled in a manner that would allow her to perform work. Dr. Evans concluded that Rambo could stand or walk for two hours during an eight-hour workday, one hour without interruption, and that Rambo could sit for only four hours per day, two hours without interruption. (Id. 425.) Dr. Evans noted not only that

Rambo's neuropathy and radiculopathy would affect her ability to work, but also that the side effects from the medication that she was currently taking to address her medical problems were expected to lead to distraction, inattention, and drowsiness. (<u>Id.</u> 432.)

Rambo was further impaired by the psychological problems that she was suffering, which the ALJ found to be a "severe impairment." (R. 28.) Dr. Al Harley ("Dr. Harley"), a physician who examined Rambo once upon request by the Social Security Administration, concluded that Rambo's psychological disorders impaired Rambo "in her ability to relate to others" and "moderately restricted [her] in daily activities and moderately constricted [her] in thought processes." (R. 23.) Dr. Manhal Weiland, a state agency non-examining physician, drew similar conclusions with respect to Rambo's psychological assessment, concluding that Rambo's psychological impairments would limit her ability to concentrate at work. (R. 349.)

The Commissioner has identified no clinical evidence which undermines Dr. Evans' conclusions, although the Commissioner notes that Dr. Paola Tumminello ("Dr. Tumminello"), who saw Rambo on only one occasion, recommended that Rambo be treated at a pain management clinic. (Objections 3-4.) However, Dr. Tumminello's suggestion that Rambo be treated at a pain clinic does not undermine Dr. Evans' conclusion in any way. Rather, it simply confirms that Rambo was suffering from pain and needed treatment, and a pain clinic could perhaps provide assistance. In fact, Rambo receives some relief from pain medication, but the ALJ cannot ignore the side effects of the medication, as well as Rambo's other impairments, all of which support Dr. Evans' conclusion that Rambo cannot perform even a sedentary job. In sum, the Commissioner fails to identify substantial medical evidence supporting the ALJ's decision to decline to give Dr. Evans' opinion controlling weight.

In addition, the ALJ's conclusion that Rambo's activities undermine Dr. Evans' opinion is not supported by substantial evidence. Rambo's daily activities do not provide the ALJ with substantial evidence necessary to justify discrediting Rambo's testimony concerning her limitations and pain. Rather, her daily activities are consistent with Dr. Evans' assessment. The Commissioner noted that Rambo walked, drove her children to school, cooked, visited people, attended church, performed household chores, and cared for her own personal/grooming needs. (Objections 4.) These activities are consistent with Dr. Evans' assessment of Rambo's physical capacity, that she cannot stand or walk for more than two hours, with up to one hour uninterrupted, and that she can sit for up to four hours, but for less than two hours uninterrupted. (R. 425.) Furthermore, the Commissioner ignored Rambo's testimony concerning the significant limitations in her daily life, such as her inability to sit for extended periods of time without pain or to concentrate without falling asleep when she reads for ten to fifteen minutes. (R. 40-41.) These limitations are consistent with the conclusion that Rambo is unfit for sedentary work.

Finally, the Commissioner asserts that the ALJ was not required to give Dr. Evans' opinion that Rambo was disabled controlling weight because the Commissioner, not Dr. Evans, is entitled to make that final decision. See 20 C.F.R. § 404.1527(e). Although the Commissioner correctly asserts that the final determination of disability lies with the Commissioner, the record lacks substantial evidence to undermine Dr. Evans' clinical assessment of Rambo, and considering Dr. Evans' assessment, Rambo's testimony, and Rambo's residual functional capacity as discussed below, Rambo is disabled. Hence, the

Commissioner's objection that Dr. Evans' determination of disability is not conclusive, while correct, is ultimately without merit.

## 2. ALJ's Decision to Discount Rambo's Credibility

The Magistrate Judge found that the ALJ's conclusion that Rambo was not entirely credible for purposes of weighing her allegations of pain, disability, and limited function was not supported by substantial evidence. The Magistrate Judge noted that the ALJ discounted Rambo's credibility because Rambo had "received good response from nerve blocks, she had a relatively high level of activity, and she often reported improvement to her doctors." (Id. 15.) However, the Magistrate Judge identified specific evidence in the record conclusively establishing that Rambo experiences significant limitations in her activities of daily living and is in severe pain. Therefore, Magistrate Judge concluded that substantial evidence in the record supports the conclusion that Rambo's pain is disabling, and Rambo's allegations of pain and limited function are not inconsistent with the medical and other evidence in the record.

The Commissioner objects to the Magistrate Judge's conclusion that the ALJ erred in discounting Rambo's credibility, claiming that Rambo's daily activities and reported side effects from pain medication are not consistent with her allegations of pain and limitations. Therefore, the Commissioner claims the ALJ properly discounted Rambo's allegations.

In assessing credibility and complaints of pain, the ALJ must (1) determine whether there is objective evidence of an impairment which would reasonably be expected to produce the alleged pain, and (2) consider these subjective complaints of pain along with other objective evidence. Craig, 76 F.3d at 591-92. As noted above, there is no question that

Rambo's hysterectomy could have caused the alleged nerve damage, and the ALJ concluded that Rambo did, in fact, suffer from the alleged pain. Against this objective medical evidence, Rambo's daily activities do not provide the ALJ with substantial evidence to justify discrediting Rambo's testimony concerning her limitations and pain. Rather, as set forth above, her daily activities are consistent with Dr. Evans' assessment and support the conclusion that Rambo is unfit for sedentary work.

The Commissioner also claims that "[t]he ALJ could conclude that [Rambo's] pain was not so disabling as to require medication," citing three different reports by Dr. Evans and noting that Rambo "had stopped taking as much Perocet" and "in 2001, she stopped taking narcotics and was off all of her medication, with the exception of Neurontin." (Objections 5.) The Commissioner's assertion lacks support in the record and is, at best, a selective reading of Dr. Evans' reports.

In the February 2001 report, Dr. Evans noted that Rambo was off narcotics, but was taking Neurontin, a pain medication, along with many other medications. (R. 280.) Also in February 2001, Dr. Evans noted that Rambo was beginning a trial of Topamax "since it has been shown to help with nerve pain." (Id. 281.) In the August 2001 report, Dr. Evans noted that Rambo was taking Neurontin and hydrocodone, another pain medication, along with many other medications. (R. 400.) Finally, in the September 2001 report, Dr. Evans noted that Rambo was still taking Neurontin and many other medications. (Id. 399.) Hence, each of Dr. Evans' reports upon which the Commissioner relies undermines the conclusion that Rambo's condition was not so "disabling as to require medication." Rather, the reports show

that Dr. Evans was attempting to prescribe a combination of medications to address Rambo's symptoms.

Finally, the Commissioner claims the ALJ's decision to discount Rambo's credibility is supported because Dr. Evans noted only once that Rambo was drowsy, and Rambo told "Dr. Haley that the primary problem, which prevented her from working, was left groin pain." (Objections 5.) The primary reason Rambo cannot work is leg pain; she has not alleged that her psychological or respiratory problems are the primary basis. However, with respect to her ability to work, her condition is worsened by the additional complicating psychological and respiratory problems. Moreover, the fact that Dr. Evans noted only once that Rambo was suffering from daytime drowsiness does not undermine Rambo's testimony to that effect, especially given that Dr. Evans frequently changed the combinations of medicines that Rambo was taking in an effort to manage her symptoms and because the dosage of the medicines making her sleepy was increased over time. (R. 76.)

### 3. ALJ's Determination that Rambo Could Perform a Significant Range of Sedentary Work

The Magistrate Judge found that the ALJ erred in finding that Rambo retained the residual functional capacity to perform a limited range of sedentary work. The Magistrate Judge deferred to the opinion of Dr. Evans, as well as the other evidence in the record, to conclude that the ALJ's determination that Rambo could perform sedentary work was not supported by substantial evidence. (Id. 17.)

The Commissioner claims that, contrary to the Magistrate Judge's conclusion, the determination by the ALJ "was based on all the evidence, both medical and non-medical, and

was supported by substantial evidence." (Objections 6.) As set forth above, the substantial evidence in the record supports Dr. Evans' conclusion that Rambo was disabled and does not support the Commissioner's determination. The court concludes that there is not substantial evidence inconsistent with Dr. Evans' opinion. As such, the ALJ erred in rejecting Dr. Evans' conclusions concerning Rambo's residual functional capacity, and the denial of benefits must be reversed. See Coffman, 829 F.2d at 518 (holding that, when there was no persuasive evidence undermining the attending physician's opinion, reversing the Commissioner's denial of benefits is appropriate.)

### 4. Defective Hypothetical Question

The Magistrate Judge also found that the ALJ's hypothetical question to the vocational expert did not reflect Dr. Evans' assessment or the limitations set forth in Rambo's testimony. The Magistrate Judge found that the ALJ erred in failing to include those limitations in his hypothetical question to the vocational expert, and noted, "Upon questioning from the plaintiff's attorney, the ALJ testified that if the limitations found by Dr. Evans, and the additional limitations testified to by the plaintiff, were considered, there were no jobs the plaintiff could perform." (Report 10; R. 88-92.)

The Commissioner argues that the limitations reflected in the hypothetical question were those "borne out by the evidentiary record, supported by substantial evidence, and accepted by the ALJ." (Objections 7.) The court has set forth its reasons for concluding that the ALJ erred in not giving Dr. Evans' opinion controlling weight and in discrediting Rambo's testimony. Accordingly, the hypothetical question to the vocational expert should

have reflected Dr. Evans' conclusions and Rambo's testimony, and the ALJ erred in omitting that information.

### 5. Remand for Further Proceedings

Finally, the Commissioner objects to the Magistrate Judge's determination that the record need not be reopened on remand. Courts are empowered by 42 U.S.C. § 405(g) to affirm, modify, or reverse the decision of the Commissioner with or without remanding the case for a hearing. See Melkonyan v. Sullivan, 501 U.S. 89, 98 (1991). Although the Commissioner requested that the court remand the case for further proceedings if it could not affirm the ALJ's decision, the court finds that remanding the case would be fruitless, as there is no need for further hearings or development of the facts. As explained above, there is no job that Rambo could perform if Dr. Evans' findings and Rambo's testimony are considered, and Rambo is therefore entitled to disability benefits. The court adopts the Magistrate Judge's Report and recommendation, reverses the Commissioner's decision, and remands the case for a determination of benefits.

Therefore, it is

**ORDERED** that the decision of the Commissioner is reversed, and the case is remanded for a determination of benefits.

**IT IS SO ORDERED**.

> s/ Henry M. Herlong, Jr.
> United States District Judge

Greenville, South Carolina
September 19, 2005